JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

MATTHEW A. PARRELLA (NYBN 2040855)
JOSEPH A. FAZIOLI
Assistant United States Attorneys

150 Almaden Blvd., Suite 900
San Jose, CA 95113
Telephone: (408) 535-5042
FAX: (408) 535-5066
matthew.parrella@usdoj.gov
joseph.fazioli@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　v.<br><br>LAN LEE,<br>　aka Lan Li, and<br><br>YUEFEI GE,<br><br>　　　Defendants. | Case No. CR 06-00424-JW<br><br>UNITED STATES' PROFFER OF FBI CONTACTS WITH DEFENDANTS AFTER JULY 29, 2003<br><br>Trial:　　June 18, 2009<br>Time:　　8:30 a.m.<br>Court: Hon. James Ware |

**I.　Introduction**

　　　The defendants previously jointly moved to suppress all evidence and any statements obtained during FBI interviews of the defendants on July 29, 2003, as well as any evidence seized during the search of each defendant's home computer on July 29, 2003. The Court conducted several sessions of evidentiary hearings regarding the defendants' motion. By order dated October 17, 2008, the Court granted the defendants' motion to suppress as part of the Government's case-in-chief statements made to the FBI on July 29, 2003. The Court also found that the defendants

voluntarily gave their consent to permit the search of their home computers.  The Court accordingly denied the defendants' motion to suppress any evidence seized during the search of each defendant's computer on July 29, 2003.

In the same October 17, 2008 Order, the Court stated that the United States shall submit a proffer listing any statement which it believes remains admissible.  This filing represents the United States' proffer of the defendants' post-July 29, 2003 statements to the FBI which the United States believes remain admissible and (unless otherwise noted) plans to introduce in its case-in-chief.  In certain of the conversations listed below, the defendants made self-serving statements which the United States does not plan to offer in case-in-chief and would object to their use at trial by the defense as self-serving hearsay.  See United States' Motions in Limine filed on May 29, 2009.  The United States also intends to present at trial statements that the defendants made to the FBI on July 29, 2003 which established that the defendants voluntarily gave their consent to permit the search of their home computers.

**II. Lan Lee**

The United States is aware of five interactions between Lee and the FBI after Agent Sieber's initial interview with Lee at NetLogic Microsystems headquarters on July 29, 2003. What follows is a summary of the admissible content of the conversations that the United States may seek to introduce at trial in its case-in-trial.  In the September 12, 2003 conversation listed below, Lee made self-serving statements which the United States does not plan to offer in its case-in-chief and would object to their use at trial by the defense as self-serving hearsay.  See United States' Motions in Limine filed on May 29, 2009.

**1.  July 30, 2003**

Admissible Content:

Agent Sieber had arranged to meet with Lee at his home to drop off the computer that Lee released to the FBI on July 29, 2003.  When Agent Sieber arrived, Lee was not at home.  He called Lee, and Lee told him that he was delayed at his daughter's swim lesson. Lee agreed to meet Agent Sieber at the FBI's Palo Alto Office to pick up the computer. Agent Sieber and Lee spoke briefly during the exchange at the FBI office, but the conversation was a "discussion of the

same exact things [they] had discussed the day before, nothing new."

**2. August 4, 2003**

Admissible Content:

Lee called Agent Sieber to tell him that the SICO partnership had been formally dissolved, and to offer documentary proof of the dissolution. Lee came to the FBI's office in Palo Alto and gave Agent Sieber a certificate showing the dissolution of SICO.

**3. August 6, 2003**

Admissible Content:

Lee called Agent Sieber to tell him that he had just mailed a package to his cousin in China. He said the package contained fifty face masks for SARS protection as well as a compact disc containing pictures from a previous trip to China.

The United States does not anticipate introducing this conversation in its case-in-chief.

**4. September 12, 2003**

Admissible Content:

Agent Sieber called Lee and asked him if he would be willing to come to the FBI's Palo Alto office to be interviewed. Lee agreed and came to the office where Agents Sieber and Cano interviewed him. During the interview, Lee told Agents Sieber and Cano that he:

- participated in the design of the CAM3 chips at NLM as part of his employment;
- was issued a copy of the CAM3 data sheets as part of his work on the project;
- never downloaded any of the data sheets on to his home computer;
- understood NLM's confidentiality policies required that the company's confidential information, including CAM3 data sheets, not be altered or passed to anyone outside of NLM;
- never used, possessed, or altered the CAM3 data sheets outside of NLM workspace;
- had never seen the altered form of the data sheets found on Ge's computer, did not know of Xiadong Yang translating the data sheets before being altered, did not know how NLM's confidential markings had been removed from the data sheets, and did not know

CR 06-00424 JW
UNITED STATES' PROFFER OF FBI CONTACTS
WITH DEFENDANTS AFTER JULY 29, 2003            3

      why SICO's business name had been inserted into a page of the data sheets;

- recalled participating in the cutting and pasting of portions of an NLM document into SICO's business plan at Ge's home while working with Ge and Yang, but could not remember which NLM document was used;
- took SICO's business plan to China in May 2002, but did not remember taking a translated version of the CAM3 data sheets with him on the trip.

**5.  June 16, 2006**

      Agents Sieber, Wislar, Gerges, and Pryzybyla arrested Lee at his home.  Agent Gerges advised Lee of his Miranda rights.  Lee made no statements to the agents.

      The United States will not use Lee's refusal to make a statement at the time of his arrest in its case-in-chief.

**III.  Yufei Ge**

      The United States is aware of two interactions between Ge and the FBI after Agent Cano's initial interview with Ge at NetLogic Microsystems headquarters on July 29, 2003.  What follows is a summary of the admissible content of these conversations that the United States may seek to introduce at trial in its case-in-trial.  In the September 10, 2003 conversation listed below, Ge made self-serving statements which the United States does not plan to offer in case-in-chief and would object to their use at trial by the defense as self-serving hearsay.  See United States' Motions in Limine filed on May 29, 2009.

**1.  September 10, 2003**

Admissible Content:

      Agent Sieber called Ge and asked him if he would be willing to come to the FBI's Palo Alto office to be interviewed.  Ge agreed and came to the office where Agents Sieber and Cano interviewed him.  During the interview, Ge told Agents Sieber and Cano that he:

- was working on NLM's Pegasus chip design in February 2002, and received a hard copy of the Pegasus chip data sheets as part of his work;
- downloaded and installed a copy of the Pegasus chip data sheets on his home computer in

August or September of 2002 without authorization from his supervisor;
- downloaded copies of both (NSE5512 and NSE5512GLC) CAM3 data sheets and installed them on his home computer in August or September 2002, though he was not working on the CAM3 design teams;
- had received an e-mail copy of one of the CAM3 data sheets from his supervisor by e-mail, but never received authorization to install the data sheets on his home computer;
- discussed a business venture with Xiadon Yang and Lan Lee in February 2002;
- met with Lee and Yang in March 2002 to further discuss the business venture, and Lee stated during the meeting: "We can use the TCAM design as the basis for our chip's design";
- was aware that Lee registered SICO Microsystems Inc. in Delaware in May 2002, and SICO's partners consisted of Ge, Lee, and Yang;
- met with Lee and Yang at Yang's home in March 2002 to draft SICO's initial business plan;
- brought an electronic copy of the CAM3 data sheets, which were NLM's intellectual property, to the March 2002 meeting at Yang's house with the intent of cutting and pasting portions of the data sheets into the SICO business plan;
- knew that text and diagrams from the CAM3 data sheets were in fact cut and pasted into SICO's business plan;
- believed that using the CAM3 data sheets gave SICO's business plan a "jumpstart";
- had altered the CAM3 data sheets on his home computer by removing all NLM confidential disclaimers throughout the data sheets, and replacing the term "NSS5512GLC" with "SICO" on one page;
- understood it was SICO's intent to represent SICO's chip design by using information derived from the CAM3 data sheets;
- believed that Lee was aware of the origin of the data sheets they used to create the business plan, because Lee worked with them regularly as part of his employment;

CR 06-00424 JW
UNITED STATES' PROFFER OF FBI CONTACTS
WITH DEFENDANTS AFTER JULY 29, 2003          5

- heard Lee suggest that they use portions of the CAM3 data sheets for the SICO business plan during the meeting at Yang's home in March 2002;
- faxed a copy of SICO's business plan to his cousin in China so that his cousin could look for venture capital funding for SICO;
- met with Lee and Yang again at Ge's home in June 2002 to draft a revised version of the business plan;
- was aware that portions of the CAM3 data sheets were again copied into the business plan, which Yang typed because his Mandarin writing skills were the best of the group.

**2.    June 16, 2006**

Agents Monaghan, Tosh, Casey, Wu and Brown arrested Ge at his home. Ge made no statements to the agents.

The United States will not use Ge's refusal to make a statement at the time of his arrest in its case-in-chief.

DATED: June 1, 2009                    Respectfully submitted,

                                       JOSEPH P. RUSSONIELLO
                                       United States Attorney


                                       _____/s/_____
                                       MATTHEW A. PARRELLA
                                       JOSEPH A FAZIOLI
                                       Assistant United States Attorneys